ALVIS BURNETTE v. HARRY CLAY PERDUE

No. 7518SC1053

(Filed 16 June 1976)

1. **Automobiles § 79— intersection accident — traffic signals — contributory negligence**
   In an action arising out of a collision at an intersection controlled by a traffic signal, plaintiff's evidence did not disclose as a matter of law that his negligence, if any, was a proximate cause of the accident where plaintiff testified that he proceeded when the light turned green, he glanced briefly in the general direction of defendant's approaching car, and he was unable to see defendant until immediately prior to the impact.

2. **Rules of Civil Procedure § 50— granting alternative motion for new trial**
   The trial court did not abuse its discretion in granting, in the alternative, defendant's motion for a new trial.

APPEAL by plaintiff from *Walker, Judge.* Judgment entered 19 August 1975 in Superior Court, GUILFORD County. Heard in the Court of Appeals 9 April 1976.

Plaintiff alleged in his complaint filed 30 November 1973, that on or about 4 September 1973, the defendant negligently entered an intersection against a red light, and collided with plaintiff's car; that he received injuries to his neck, shoulder and leg which caused him severe pain and suffering, and he prayed for $35,000 in damages.

Defendant's answer denied plaintiff's substantive allegations, averred that plaintiff was contributorily negligent and

counterclaimed that defendant's vehicle was damaged as a result of plaintiff's negligence.

At trial, plaintiff, testifying on his own behalf, stated that as he " . . . approached the intersection of East Friendly Avenue and Davie Street I observed that the light was red, and I slowed down to approximately ten miles per hour and got within a car or two car lengths of the intersection, and the light turned green, and so I looked and proceeded on. At the time I looked, after the bus cleared the intersection, I didn't see anything. I told the police officer that I was going approximately twenty miles per hour at the time of the collision, but before then I was going slower because I had slowed down for the light. As I approached the intersection I was going about ten miles per hour. When I was back half a block from the intersection I was going around twenty when I saw the bus clear the intersection. I was approximately one to two car lengths from the intersection at the same time that the light turned from red to green. I saw the 1965 Buick automobile driven by Mr. Perdue before it hit me only mometarily. I can't say exactly but I'd imagine it was about one car length or a car and a half or two, something like that, from me when I saw it."

Plaintiff further testified that he tried to stop his car before the impact but claimed the mishap occurred before he " . . . could hardly do anything [about it]." Plaintiff also asserted that the defendant " . . . admitted to the officer that he had run the red light, said he saw it was red before he entered the intersection but he thought he could make it."

On cross-examination the plaintiff stated that he did look to his

" . . . left before I entered the intersection, I remember the question in my deposition: 'Did you look to your left onto Davie Street there before you actually entered the intersection?' And the answer: 'No, I didn't. I was looking where I was going ahead.' That takes in your point of view. When you drive ahead you view so much to the left and the right and in front of you. I do not remember looking to the left onto Davie Street to turn my head to look left, but I cut my eyes momentarily to see. I couldn't see anything on the left because there is obstructions there, a building and there were cars and the way the road is ele-

vated you have to get almost in the intersection before you can look down Davie Street.

The building there on the corner is set back a little bit from the edge of the curb on Davie Street. There is another building that sets out further next to the sidewalk. Before you get into the intersection, the building and the cars on the left, all of that obstructs your view. Those buildings are some distance back from the right hand curb line on Davie Street. I imagine four to five feet back. I am not positive. I didn't measure it. They would have to be with the sidewalk. I recall I stated in that deposition that I did not see Mr. Perdue's automobile until just an instant before the impact occurred. I was mashing on the gas to go ahead and when I saw him he was against me by the time I got my foot on the brake—by the time I tried to get my foot on the brake. I didn't see the other car in enough time to stop. As I approached the intersection traveling on Friendly Avenue I observed the light governing the flow of traffic there on the street where I was traveling to be continuous red. I saw a Duke Power Company bus go through the intersection. The rear of that bus cleared the intersection just as I got twenty to twenty-five feet from the edge of it. I saw the bus pass through. I did not see any other traffic going through the intersection in lanes on Davie Street farther to the west than the lane in which the bus was traveling. . . . "

Medical evidence indicated that plaintiff sustained a cut about the leg, a mild concussion and trauma to the neck and knee area. The evidence also tended to show that plaintiff was unable to work for several weeks and required a number of physical therapy sessions. Medical bills totalling several hundred dollars were admitted into evidence.

The parties stipulated that a traffic citation was given the defendant as a result of the accident which is the subject of this suit, and it was also stipulated that the defendant entered a guilty plea to the citation in the District Court of Greensboro. It was also stipulated that the traffic citation was for running a red light.

Defendant, testifying on his own behalf, recalled that he

" . . . was traveling north on Davie Street toward the Golden Gate Shopping Center. As we approached that area,

we heard a siren, and they always told me when you heard a siren if you could to pull over to your right. So, I pulled over to the right behind a Duke Power bus. Davie Street is a one way street going north.

I was in the second lane over from the right. When the siren went off, I knew it was right behind me. So, I pulled over and came to a stop—almost a stop. I would not say plumb stopped, because the officer in the police car came on by us, and the bus pulled on off, so I pulled on off. The police car went through the intersection. I saw the flashing green lights at the intersection. Both of the stop lights were on flashing green. And I have seen stop lights on flashing red but I hadn't seen them on flashing green. And so everybody else proceeded to go forward and I just went on forward. And as I approached the intersection there, the lights were on flashing green and the traffic was all moving, so I just moved on in there, and the bus stopped on the corner in front of me. As I entered the intersection, I was still in the second lane from the right curb on Davie Street. The bus was proceeding ahead of my car. Just the best I could remember, I would say the bus was maybe ten or fifteen feet ahead of me. I don't know why the bus stopped. It held up the traffic, it looked like, she slowed up. All of them come to about a stop there, and I was out there and I think I was in the third lane over, the best I remember and recall. At about that time bam. If I saw Mr. Burnette's car before the impact occurred, it was just a mere glance. I saw the traffic signal at the time I entered into the intersection itself. It was flashing green.

I proceeded across the intersection to the point where the impact occurred. I did not see the traffic signal red at any time before the actual impact, not to my knowledge. I observed the traffic signal immediately after the impact, it was red at that time. As to did I have time to put on my brakes on my car it was close, to tell you the truth. . . . ”

Defendant denied that he ran the light and charged that he never so stated to the contrary.

Defendant's wife, a passenger in the defendant's car essentially corroborated defendant's version of the mishap.

Plaintiff, on rebuttal, testified that when he “ . . . first had a conversation with Mr. Perdue, I was sitting in the front seat

of my car with the door open, turned as if to get out. He told me he saw the light was red before he entered the intersection but he thought he could make it, and he wanted to apologize for the accident and shake hands to let me know there were no hard feelings on my part. . . . "

From a jury verdict for plaintiff of $7,500, the defendant " . . . moved for judgment notwithstanding the verdict upon the grounds that the evidence established plaintiff's contributory negligence as a matter of law and, in the alternative, Defendant [further] moved for a new trial upon the grounds of insufficiency of the evidence to justify the verdict and that the verdict was contrary to law, the damages awarded by the jury were excessive and errors of law occurred at the trial." From the trial court's orders granting defendant's motions for judgment notwithstanding the verdict and for a conditional new trial, plaintiff appealed.

Other facts necessary for decision are set out below.

*O'Connor & Speckhard, by Harry J. O'Connor, Jr., for plaintiff appellant.*

*Jordan, Wright, Nichols, Caffrey & Hill, by William B. Rector, for defendant appellee.*

MORRIS, Judge.

Plaintiff appellant first contends that the trial court erred in setting aside the jury's verdict and in entering judgment notwithstanding the verdict. We agree.

[1] Here, the plaintiff testified that he proceeded when the light turned green and that he in fact glanced briefly in the general direction of defendant's approaching car, but claimed he was unable to see the defendant until immediately prior to the impact. Under these circumstances, the evidence does not indicate, as a matter of law, that plaintiff's negligence, if any, was a proximate cause of this accident and the trial court erred in upsetting the jury's verdict.

[2] Plaintiff also argues that the trial court erred in granting, in the alternative, defendant's motion for a new trial. We disagree. The decision to grant a new trial lies within the discretion of the trial court and we find nothing in this record indicating abuse of this discretion. See: *Coppley v. Carter,* 10 N.C. App.

512, 179 S.E. 2d 118 (1971). Suffice it to say, that the trial court's decision to grant defendant a new trial was warranted and proper in view of all the circumstances of this case.

The judgment of the trial court is reversed in part and affirmed in part, and plaintiff is entitled to a

New trial.

Judges PARKER and MARTIN concur.